No.  22-2349

---

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

XUAN TAM,

Defendant-Appellant.

---

Appeal From The United States District Court
For The Northern District of Illinois
Case No. 19 CR 158-5
The Honorable Virginia M. Kendall

---

BRIEF AND REQUIRED SHORT APPENDIX OF
DEFENDANT-APPELLANT XUAN TAM

---

JEFFREY B. STEINBACK
8351 Snaresbrook Road
Roscoe, Illinois 61073
(847) 624-9600
Attorney for Xuan Tam

ORAL ARGUMENT REQUESTED

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No. 22-2349

Short Caption: United States v. Xuan Tam

The undersigned, counsel of record for the Defendant-Appellant, Xuan Tam, furnishes the following in compliance with 7th Circuit Rule 26.1:

1. Xuan Tam

2. Marc Gottreich represented Xuan Tam in the District Court from the time of the indictment through sentencing. Jeffrey B. Steinback will appear for Mr. Tam in this Court.

3. Not applicable.

Attorneys' Printed Names:     Jeffrey B. Steinback

Address:                     8351 Snaresbrook Road
                             Roscoe, Illinois 61073

Phone Number:                (847) 624-9600
E-Mail Address:              jbsteinbacklaw@aol.com


                                         /s/ Jeffrey B. Steinback
                                         Jeffrey B. Steinback

Dated:  November 4, 2022

ii

<u>TABLE OF CONTENTS</u>

DISCLOSURE STATEMENT......................................................................... ii

TABLE OF AUTHORITIES ........................................................................ iii

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF THE ISSUES ................................................................... 1

STATEMENT OF THE CASE ...................................................................... 1

SUMMARY OF ARGUMENT ..................................................................... 7

ARGUMENT

      The district court failed to comply with Federal Rule of Criminal Procedure
      32(i)(A)(1)……………………………………………………………………….. 9
      Standard of Review…………………………………………………………… 9

      The district court failed to give proper consideration to the five factors set forth
      Iin U.S.S.G. § 3B1.2……………………………………………………….. 10
      Standard of Review…………………………………………………………… 10

      Mr. Tam was denied his constitutional right to effective assistance of counsel..... 14
      Standard of Review................................................................................ 14

CONCLUSION ...................................................................................... 19

RULE 30(D) CERTIFICATE OF COMPLIANCE............................................. 20

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7) F.R.A.P. 32(g),
and CR 32(c).......................................................................................... 2 0

CERTIFICATE OF SERVICE....................................................................... 20

ATTACHED REQUIRED SHORT APPENDIX

i

## TABLE OF AUTHORITIES

CASES

*Gall v. United States,* 552 U.S. 38 (2007)……….……………………………………….     16-17

*Kimmelman v. Morrison,* 477 U.S. 365 (1986)……...………………………………     18

*Strickland v. Washington,* 466 U.S. 688 (1984)…………………………………….     14

*United States v. Jarigese,* 999 F.3d 464 (7th Cir. 2021)……………………………     9

*United States v. Miller,* 795 F.3d 619 (7th Cir. 2015)……...……………….……     14

*United States v. Orlando,* 819 F.3d 1016  (7th Cir. 2016)…………………………….     10

*United States v. Panaigua-Verdugo,* 537 F.3d 722 (7th Cir. 2008)……………………     10

*United States v. Quintero-Leyva,* 823 F.3d 519 (9th Cir. 2016)……………………..     12

*United States v. Rodriguez,* 44 F.4th 1229 (9th Cir. 2022)…………………………..     11

*United States v. Rodriguez-Luna,* 937 F.2d 1208 (7th Cir. 1991)……………………     9

*United States v. Rone,* 743 F.2d 1169 (7th Cir. 1984)………………………………….     9

*United States v. Traeger,* 289 F.3d 461 (7th Cir. 2002)……………………………     12

*United States v. Warner,* 792 F.3d 847 (7th Cir. 2015)………………………………     17

OTHER AUTHORITY

Federal Rule of Criminal Procedure 32(i)(A)(1)…………………………………….     9

U.S.S.G. § 3B1.2……………………………………………………………..     passim

18 U.S.C. § 3553(a)……………………………………………………………..     15-16

## JURISDICTIONAL STATEMENT

This is an appeal of the final order entered on July 20, 2022, by the United States District Court for the Northern District of Illinois.  On August 1, 2022, Xuan Tam filed a timely notice of appeal. The District Court's jurisdiction was based on the federal prosecution of Xuan Tam and the District Court retained subject matter jurisdiction under 18 U.S.C. § 3231, as the Appellant was charged with money laundering, in violation of 18 U.S.C. § 1956(h). Jurisdiction of the United States Court of Appeals for the Seventh Circuit is pursuant to both 28 U.S.C. § 1291, and Rule 4(b) of the Federal Rule of Appellate Procedure.  This Court has jurisdiction of the sentence imposed pursuant to 18 U.S.C. § 3742(a)

## STATEMENT OF THE ISSUES

The district court failed to comply with Federal Rule of Criminal Procedure 32(i)(A)(1) when it did not verify that Mr. Tam had read the PSR, discussed it with his attorney, and if he had any objections.

The district court failed to give proper consideration to the five factors set forth in U.S.S.G. § 3B1.2

Mr. Tam was denied his constitutional right to effective assistance of counsel.

## STATEMENT OF THE CASE

On October 20, 2020, Xuan Tam was charged in a superseding indictment with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count One); and money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Count Two). (Dkt. No. 37) On February 15, 2022, Mr. Tam entered a plea of guilty to Count One of the superseding indictment pursuant to a written plea agreement. (Dkt. No. 150)

The factual basis, as set forth in the plea agreement, states as follows:

1

Beginning in February 2017 and continuing until September 2017, Xuan Tam knowingly conspired with Minghan Chen, Zhiqiang Chen, Weishe Tan, Ziying Tan, Chris Mei, Individual A, and other persons known and unknown to knowingly conduct and attempt to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). (Dkt. No. 150, Plea Agreement, pages 2-3)

Specifically, between February and September 2017, Mr. Tam agreed to work with Minghan Chen, Zhiqiang Chen, Weishe Tan, Chris Mei, Individual A, and others to receive large amounts of U.S. dollars derived from narcotics sales from various money couriers in the Chicago area, and to launder those funds through "mirror" transactions. Through these mirror transactions, Mr. Tam and his associates swapped the cash narcotic proceeds for equivalent amounts of Chinese Renminbi (RMB), which Mr. Tam and his associates then caused to be wired to bank accounts in China controlled by Zhiqiang Chen's supervisor, Minghan Chen, and others. In furtherance of this conspiracy, Mr. Tam (1) in exchange for a percentage commission on each transaction, connected Zhiqiang Chen, Weishe Tan, and Ziying Tan, with Individual A, who conducted the mirror transactions; (2) at the direction of Zhiqiang Chen or Weishe Tan, collected cash narcotics proceeds in increments of $30,000 or more from drug traffickers and their associates; and (3) delivered narcotics proceeds to Individual A, Chris Mei, and others to complete the mirror transactions. (Dkt. No. 150, Plea Agreement, pages 3-4)

Mr. Tam conducted numerous pickups of cash narcotics proceeds at the direction of Zhiqiang Tan, Weishe Tan, or both. Specifically, between May and July 2017, Mr. Tam conducted 10-20 money pickups at the direction of Weishe Tan (who Tam knew was working under Zhiqiang Chen) in amounts ranging from between approximately $30,000 to $150,000 per pickup. Between approximately August and September 2017, Tam conducted approximately five

2

money pickups at the direction of Zhiqiang Chen, in amounts averaging around $50,000 per pickup. After each pickup, Tam would deliver the funds to other individuals who facilitated the mirror transactions. (Dkt. No. 150, Plea Agreement, page 4)

The money pickups worked as follows:

- Weishe Tan or Zhiqiang Chen contacted Tam when a client had drug proceeds in Chicago that needed to be collected and exchanged for RMB in China.

- Tam provided either Weishe Tan or Zhiqiang Chen a serial number on a dollar bill in Tam's possession (which served as an identifier for the transaction, and later a receipt), a cellphone number, and a code name that Tam would use for the transaction.

- At the meeting, Tam received the bulk quantities of U.S. dollars, and provided the person delivering the money the dollar bill with the serial number associated with the transaction, which functioned as a receipt for the bulk currency exchange.

- After receiving the dollars, Tam or others, including Weishe Tan, counted the money and reported the amount to Zhiqiang Chen, who in turn provided Tam or Weishe Tan with information for Chinese bank accounts to use in connection with the transaction.

- Finally, Tam or Weishe Tan delivered the dollars to a broker (or intermediary who delivered the dollars to a broker), usually Individual A or Chris Mei, who paid for (or arranged for someone else to pay for) the dollars by releasing an equivalent amount of RMB in China to the bank accounts that Zhiqiang Chen then provided.

(Dkt. No. 150, Plea Agreement, pages 4-5)

Between May 2017 and August 2017, Mr. Tam transported, transmitted, and transferred, or knowingly acted as a broker for the transfer of, approximately $1.4 million in narcotics proceeds through the collection of narcotics proceeds from various individuals and through the exchange of U.S. dollars for RMB. Mr. Tam earned a small percentage fee for each money laundering transaction in which he participated, personally earning approximately $7,500 in total for his services. (Dkt. No. 150, Plea Agreement, page 5)

Mr. Tam knew from his personal experience (including his conversations with Weishe Tan,

Zhiqiang Chen, and other individuals who delivered the currency, and others), from the large amounts of cash involved, the covert nature and circumstances of these money pickups (including his receipt of large amounts of cash from strangers in parking lots, and the use of a codename and code words and dollar bill serial numbers to coordinate the collections), the arrests of some of his associates involved in the money pickups (including Weishe Tan), and the prompt use of those U.S. dollars to buy RMB in China, that the proceeds he was collecting and delivering were derived from the sale of narcotics. Mr. Tam knew that he was collecting and exchanging narcotics proceeds in this manner because the individuals who owned and controlled the money wanted to hide their connection to the proceeds from law enforcement, as well as the source and nature of the funds, and ultimately to remit the funds back to drug traffickers in Mexico. (Dkt. No. 150, Plea Agreement, pages 5-6)

The plea agreement and the presentence report ("PSR") calculated Mr. Tam's advisory range under the Sentencing Guidelines as follows:

| | |
|---|---|
| Base Offense Level § 2S1.1(a)(2) and 2B1.1(b)(1)(H) | 22 |
| Drug Proceeds were involved § 2S1.1(b)(1) and (a)(2) | + 6 |
| Convicted under § 1956 § 2S1.1(b)(2)(B) | + 2 |
| Sophisticated Laundering § 2S1.1(a)(3) and (b)(2)(B) | + 2 |
| Acceptance of Responsibility § 3E1.1(a) | - 2 |
| Timeliness of Guilty Plea § 3E1.1(b) | - 1 |

(Dkt. No. 150)

The plea agreement and the PSR agree that Mr. Tam has zero criminal history points, thereby placing him in Category I.

As part of the plea agreement, the parties agreed to disagree whether Mr. Tam's offense

level should be decreased due to his role in the offense. The plea agreement provided: "It is the defendant's position that he was a minor participant in the offense and therefore, pursuant to § 3B1.2(b), the offense level is decreased by 2 levels. It is the government's position that the § 3B1.2(b) adjustment does not apply to defendant. Both parties are free to present evidence and argument on this issue at sentencing." (Dkt. No. 150, Plea Agreement, page 8)

Defense counsel filed what can only being described as a meager three-page sentencing memorandum on behalf of Mr. Tam, and only two paragraphs addressed Mr. Tam's role in the offense. (Dkt. No. 177)

At Mr. Tam's sentencing hearing conducted on July 19, 2022, this colloquy took place with respect to Mr. Tam's role in the offense:

> THE COURT: Okay. She [the probation officer] did not give an adjustment for role in the offense. She determined that the actors in the offense were – did I say offense or defense? She did not give an adjustment for role in the offense because she did not determine that anyone was more or less culpable. Any objection to that?
>
> [Defense Counsel]: Judge, we did object to that in our sentencing memorandum.
>
> THE COURT: Go right ahead.
>
> [Defense Counsel]: Judge, this offense for the whole conspiracy went on for a number of years. My client was involved for seven months. And his participation, we believe, was minor based on that. He did not organize the conspiracy. He was a player in the conspiracy, obviously, but he did not organize it. He was just, as the government put forth, one level of the entire conspiracy.
>
> So for that reason, Judge, we'd ask that it be a minor player.
>
> THE COURT: So, primarily, you're distinguishing on the length of time –
>
> [Defense Counsel]: Yes.
>
> THE COURT: -- and the amount of money that he laundered.
>
> [Defense Counsel]: Yes.

THE COURT:  Go ahead.

[AUSA]:  Your Honor, the defendant is not substantially less culpable than his other participants.  He was a courier in the organization.  And all of the other couriers were also involved for truncated periods of time.  They sort of jumped in at different parts of the conspiracy and – because they were replacing each other.  It started out with Weishe Tan.  Then it was the defendant.  And then it was Denny Zheng.  So they all share the similar amount of time.  Weishe Tan was involved for the longest.  But Zheng is similar to Tam in that he was involved for a period of several months as opposed to years.

The defendant is not even least culpable courier in terms of the amount of money laundered.  Denny Zheng is.  And I think your Honor could find that, just on its face, precludes the application of this adjustment.

But the adjustment is inappropriate for a few other reasons.

The extent and nature of the defendant's involvement – I mean, this was continuous, ongoing conduct for seven months.  He was involved in 15 to 20 money pick-ups, your Honor.

And it wasn't just the physical transfer of cash.  They went through an elaborate procedure to engage in the secure transactions between the money laundering organization and the drug trafficking organization.  The defendant was central to passing the information needed to conduct the secure transaction and then, at the other end, he's transferring money to the brokers who conduct the mirror transactions.  And, again, he's deeply involved in that.  He's passing the Chinese bank account information, and then he's passing the wire transfer receipts to the leaders in Mexico.

So he has a depth of involvement that goes on just beyond physically transporting things that I think that this mitigating role reduction sort of envisions.

On top of that, he understands the scope and structure of the organization.  He knew that the funds were going through China for purposes of laundering them, and that they were ultimately being remitted to the cartel in Mexico.

And, furthermore, he was profiting at the exact same amount as his co-conspirators.  They were each earning this .5 commission.

So because if that, it' just – the facts don't support that he's substantially less culpable.

THE COURT:  Okay.  Did you want to reply to his argument?

[Defense Counsel]:  No, Judge.

THE COURT:  Okay.  I do think [the AUSA] is correct regarding that fact-based determination, because we look to the degree to which he understood the scope and the structure, and he certainly did –

(Brief interruption of the proceedings.)

THE COURT:  -- oh, thank you – the degree to which he participated in the planning.  And then, of course, the degree to which he exercised authority or influenced the exercise and decision-making authority, the nature and extent of his participation, and then whether he stood to benefit.  And all of the factors that [the AUSA] just said really favor the enhancement being given.

So, over objection, I will – not enhancement, excuse me.  The lack of reduction being – now I'm going to a double negative.  I must need that cup of coffee this morning.

(Laughter.)

THE COURT:  I don't think the reduction is appropriate based upon the factual statements that [the AUSA] just made.
(Sentencing Tr., pages 5-9)

The District Court determined that Mr. Tam's total offense level is 29, and his criminal history is Category I, with an advisory guideline range of 87 to 108 months.  (Sentencing Tr., pages 9-10)  In response to the government's recommendation that 65 months is an appropriate sentence (Sentencing Tr., page 13), defense counsel complete mitigation argument on behalf of Mr. Tam is limited to 42 lines in the transcript, less than two pages. (Sentencing Tr., pages 14-15)

The District Court sentenced Mr. Tam to 65 months in the Bureau of Prisons.  The judgment was entered on July 20, 2022. (Dkt. No. 184)

A timely notice of appeal was filed on August 1, 2022. (Dkt. No. 186)

## SUMMARY OF THE ARGUMENT

Federal Rule of Criminal Procedure 32(i)(A)(1) requires the district court to directly question the defendant about the PSR and ask three questions; (1) whether the defendant had an opportunity to read the PSR, (2) whether the defendant and defense counsel have discussed the PSR, and (3) whether the defendant wishes to challenge any facts in the PSR. *United States v. Jarigese,* 999 F.3d 464, 472 (7th Cir. 2021) (citing *United States v. Rone,* 743 F.2d 1169, 1174 (7th Cir. 1984), and *United States v. Rodriguez-Luna,* 937 F.2d 1208, 1212-13 (7th Cir. 1991). The district court failed to ask these three questions and the error was hot harmless.

Xuan Tam sought a downward adjustment in his offense level due to his minor role in the offense, pursuant to U.S.S.G. § 3B1.2. In 2015, the United States Sentencing Commission Sentencing amended the commentary to induce district courts to grant mitigating-role adjustments more frequently. The Commission's most significant change was to introduce five factors district courts should consider when determining to apply an adjustment for role in the offense. The district court failed to give proper consideration to the five factors set forth in U.S.S.G. § 3B1.2, Commentary Note 3(C).

Mr. Tam was deprived of his constitutional right to effective assistance of counsel when counsel misunderstood the Sentencing Guidelines and filed a meager three-page sentencing memorandum on behalf of Mr. Tam in which two paragraphs addressed Mr. Tam's role in the offense, but failed to address the five factors set forth in U.S.S.G. § 3B1.2, Commentary Note 3(C), and exacerbated that blunder by his entire mitigation argument on behalf of Mr. Tam, which more importantly overlooked several significant factors and citation of any authority.

<u>ARGUMENT</u>

THE DISTRICT COURT FAILED TO COMPLY WITH FEDERAL
RULE OF CRIMINAL PROCEDURE 32(i)(A)(1)

<u>Standard of Review</u>

Whether the district court followed the proper procedures in imposing sentence is a question of law that this Court reviews *de novo. United States v. Jarigese,* 999 F.3d 464, 471 (7th Cir. 2021).

<u>Discussion</u>

This Court has consistently held that Federal Rule of Criminal Procedure 32(i)(A)(1) requires the district court to directly question the defendant at the sentencing hearing about the PSR, and that the district court must directly ask the defendant three questions: (1) whether the defendant has had an opportunity to read the PSR, (2) whether the defendant and defense counsel have discussed the PSR, and (3) whether the defendant wishes to challenge any facts in the PSR. *United States v. Jarigese,* 999 F.3d 464, 472 (7th Cir. 2021) (citing *United States v. Rone,* 743 F.2d 1169, 1174 (7th Cir. 1984), and *United States v. Rodriguez-Luna,* 937 F.2d 1208, 1212-13 (7th Cir. 1991).

This Court has advised district court "to carry out this brief questioning in the interest of 'focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence.'" *Jarigese,* 999 F.3d at 472 (quoting *Rodriguez-Luna,* 937 F.2d at 1213 (quoting *Burns v. United States,* 501 U.S. 129, 134 (1991).

In the case at bar, the sentencing hearing transcript demonstrates in no uncertain terms that the district failed to ask Mr. Tam these three questions, and, as a result, failed to comply with Rule 32(i)(A)(1), and this Court's authority on this point.

The error was not harmless because the sentencing court never learned whether Mr. Tam

was even provided a copy of the PSR from his attorney, nor did Mr. Tam even discuss the PSR with his defense attorney. Likewise, the sentencing court never learned whether Mr. Tam actually had been given the requisite opportunity to read and review his PSR, or what response he would have had regarding probation officer's decision not to recommend a role reduction. Further, the sentencing court would have been able to review whether Mr. Tam had ever read the Government's relatively nominal facts related in the PSR concerning the issue of his role in the offense. Moreover, the sentencing court could have determined had provided his attorney with facts essential to bolster defense counsel's anemic argument with respect to this issue. In addition, the sentencing court could have inquired into the nature of Mr. Tam's role, given for example, if he was immediately replaced with another individual after Mr. Tam voluntarily withdrew from the conspiracy.

Accordingly, this Court should remand this cause for a new sentencing hearing.

## THE DISTRICT COURT FAILED TO GIVE PROPER CONSIDERATION TO THE FIVE FACTORS SET FORTH IN U.S.S.G. § 3B1.2.

Standard of Review

This Court reviews a district court's interpretation of the sentencing guidelines *de novo* and its factual findings for clear error. *United States v. Orlando,* 819 F.3d 1016, 1024 (7th Cir. 2016). Because the denial of a minor role adjustment relies on a finding of fact, this Court reviews this determination for clear error. *Id.* Clear error exists when, after reviewing the evidence, this Court is left with a definite and firm conviction that a mistake has been committed. *Id.* (citing *United States v. Panaigua-Verdugo,* 537 F.3d 722, 724 (7th Cir. 2008).

Discussion

The Sentencing Guidelines provide attorneys and district courts with tools for distinguishing among individuals who commit the same crime but have different levels of

10

culpability.  Leaders of a criminal offense may have their offense levels increased by up to four levels, and individuals such as Mr. Tam who had relatively minor roles may have their offense levels reduced by up to four levels. *See* U.S.S.G. §§ 3B1.1 and 3B1.2.

To be eligible for the two-level adjustment Mr. Tam sought, a defendant must be "less culpable than most other participants in the criminal activity," U.S.S.G. § 3B1.2(b), Commentary Note 5), and "substantially less culpable than the average participant in the criminal activity." *Id.* at Commentary Note 3(A).

Before 2015, the mitigating role commentary provided little guidance regarding how to determine a defendant's culpability relative to other participants in the offense.  For the most part, district courts took a freewheeling approach, considering whatever factors they deemed relevant, which resulted in inconsistent application.  After reviewing numerous cases, the Sentencing Commission determined that it was being "applied inconsistently and more sparingly than the Commission intended." U.S.S.G. Supp. to App. C Amendment 794.  To remedy this problem, the Sentencing Commission amended the commentary to induce district courts to grant mitigating-role adjustments more frequently. *Id.*  The Commission's most significant change was to introduce five factors district courts "should consider" when determining to apply an adjustment:

> (i)    The degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)    The degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)    The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)    The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and
>
> (v)     The degree to which the defendant stood to benefit from the criminal activity.

11

U.S.S.G. § 3B1.2, Commentary Note 3(C).

The district court must consider *all* of these factors when determining to grant a mitigating-role adjustment. *See United States v. Rodriguez,* 44 F.th 1229, 1233 (9th Cir. 2022); and *United States v. Quintero-Leyva,* 823 F.3d 519, 523 (9th Cir. 2016). Unfortunately, the district court was placed in the dubious position having precious little substantive input from defense counsel when considering a role in the offense reduction for Xuan Tam.

The transcript from the sentencing hearing demonstrates that the district court only considered the first factor tangentially. (Sentencing Tr., page 8) With respect to the other four factors, the district court merely glossed over them without any substantive consideration or findings. Rather, it appears the district court treated each factor as presenting a binary choice: either it was satisfied, and it weighed against a minor role reduction, or it was not, and weighed in favor of the reduction.

When applying the first factor, the district court must examine the defendant's knowledge of the scope and structure of the broader group of people involved in the offense. In this case, the prosecutor admitted that Mr. Tam "was a courier in the organization," but argued, "he understands the scope and structure of the organization. He knew that the funds were going through China for purposes of laundering them, and that they were ultimately being remitted to the cartel in Mexico." (Sentencing Tr., pages 6, 8) The Government did not expound on their conclusionary arguments. Relatedly, the district court failed to consider the degree to which Mr. Tam knew of the scope and structure of that organization. On remand, competent defense counsel will address this issue and the district court may then properly explain to what degree, if any, Mr. Tam knew of the scope and structure of the organization.

The second factor is the "degree to which the defendant participated in the planning or organizing the criminal activity." The record is devoid of any comments by the prosecutor or

12

findings by the district court with respect to the second factor. On remand, competent counsel will address this issue and the district court may then properly examine the degree, if any, that Mr. Tam participated in planning and organizing the criminal activity.

The third factor is the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority. The record is devoid of any comments by the prosecutor or findings by the district court with respect to the third factor. It should be noted that the Plea Agreement does not reflect Mr. Tam having decision-making authority, but, rather, Mr. Tam having received directives on who and when to meet someone to pick up currency, and that Mr. Tam followed the directives he was given. On remand, competent defense counsel will address this issue and the district court may then properly examine the degree, if any, that Mr. Tam exercised decision-making authority.

The fourth factor relates to the discretion the defendant had in performing those acts. The record is devoid of any comments by the prosecutor or findings by the district court with respect to the fourth factor. It should be noted that the Plea Agreement does not reflect Mr. Tam having any discretion in performing the acts he was instructed to do. Rather, Mr. Tam received instructions on who and when to meet someone to pick up currency, and that Mr. Tam followed the instructions he was given. On remand, competent defense counsel will address this issue and the district court may then properly examine the nature and extent of Mr. Tam's participation in the commission of the criminal activity, including the acts performed by Mr. Tam and the responsibility and discretion Mr. Tam had in performing those acts.

The fifth and final factor relates to the degree to which Mr. Tam stood to benefit from the criminal activity. The prosecutor indicated that Mr. Tam, in his role as a courier, "was profiting at the exact same amount as his co-conspirators. They were each earning this .5 commission." (Sentencing Tr., page 8) We must presume the prosecutor is referring to the other couriers involved

13

in the scheme, and certainly not the organizers and leaders involved in the conspiracy. However, Mr. Tam was prejudiced because the district court failed to consider the degree to which Mr. Tam stood to benefit from the criminal activity. The record indicates that the "benefit" realized by Mr. Tam was limited to $7,500 over the seven-month period in which he was involved and then voluntarily withdrew from the conspiracy. On remand, competent defense counsel will address this issue and the district court may then properly examine the degree to which Mr. Tam stood to benefit from the criminal activity.

The record clearly establishes, and this Court should hold, that it is left with a definite and firm conviction that a mistake has been committed when the district court failed to properly consider the relevant factors regarding Mr. Tam's role in the offense. Accordingly, this Court should remand this matter for a new sentencing hearing.

## MR. TAM WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

Standard of Review

In reviewing a claim of ineffective assistance of counsel, this Court reviews the district court's conclusions of law *de novo,* and its factual findings for clear error. *United States v. Miller,* 795 F.3d 619, 627 (7th Cir. 2015) (citing *United States v. Traeger,* 289 F.3d 461, 470 (7th Cir. 2002).

Discussion

To establish a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland,* the defendant must demonstrate (1) counsel's performance fell below an objective standard of reasonableness, and (2) the defendant was prejudiced as a result of that deficient performance. *Strickland,* 466 U.S. at 687-88.

14

<u>Deficient Performance</u>

In the case at bar, defense counsel's performance was deficient in at least two critical aspects: (1) Mr. Tam's role in the offense, and (2) an extremely meager mitigation argument.

(1)    <u>Role in the Offense</u>

In the case at bar, defense counsel did not address ***any*** of these five factors in his three-page sentencing memorandum, nor did counsel address ***any*** of these five factors at the sentencing hearing.[1] Accordingly, this clear and abject failure undoubtedly falls below an objective standard of reasonableness, and satisfies the first prong under *Strickland.*

(2)    <u>Mitigation Argument</u>

As noted above, defense counsel's entire mitigation argument consisted of just 42 lines in the transcript, less than two pages. (Sentencing Tr., pages 14-15)  More importantly, the mitigation argument did not touch upon the numerous § 3553(a) factors, let alone expound on them.  For example, defense counsel did not discuss that (1) Xuan Tam came to the United States with his family in 1997 when Xuan was 17 years old; (2) Xuan worked at restaurants as a teenager to help support his family; (3) Xuan became a naturalized citizen of the United States in 2005; (4) Xuan graduated from the University of Colorado Boulder in December 2006 with a Bachelor of Science degree in business administration; (5) Xuan lived in Chicago from 2007 to 2017 when he returned to Colorado to help care for his ailing father; (6) Xuan's father is 80-years old and is a retired restaurant worker who suffers from lupus and diabetes; (7) Xuan's mother owns the family restaurant; (8) Xuan has two siblings; (9) Xuan has an excellent relationship with his parents and two siblings; (10) Xuan married Yang Zhu Huang in 2013 and his wife is supportive of her

---

[1] In the wake of defense counsel failing to argue the small amount of money Mr. Tam received, as contemplated by the fifth factor, the district court had to explicitly ask defense counsel if he was also relying on the amount of money that Mr. Tam laundered, to which defense counsel merely replied, "yes."

husband; (11) Xuan and Yang Zhu have two young children, ages eight and six; (12) Xuan does not have a history alcohol or drug abuse; (13) Xuan lives with his elderly parents, wife, and their two young children and works in the family restaurant; and (14) Xuan Tam is a 39-year-old first time non-violent offender who poses absolutely no threat or risk of re-offending in light of his conduct over the past six years while free on bond.[2]

In addition, Defense counsel failed to argue that when Xuan voluntarily withdrew from the conspiracy in 2017, two years before the conspiracy ended, and pleaded guilty five years after withdrawing from the conspiracy, that this is a strikingly similar situation to *Gall v. United States,* 552 U.S. 38 (2007). In *Gall,* the defendant joined an ongoing criminal enterprise distributing the controlled substance "ectasy" while in college in Iowa, but withdrew from the conspiracy after seven months, had not sold any illegal drugs since, was residing in Colorado, worked steadily since graduation, and pleaded guilty three-and-a-half years after withdrawing from the conspiracy. The PSR concluded that Gall was not an organizer, leader, or manager; that his offense did not involve the use of any weapons; and that Gall's advisory sentencing range was 30-37 months in prison. The district court sentenced Gall to 36 months' probation and supported its decision by noting Gall's explicit withdrawal from the conspiracy almost four years before the filing of the Indictment; the defendant's post-offense conduct, including the support of his family and friends, lack of criminal history, and running his own successful business. The district court also explained that, "Any term of imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who, the Court has found, understands the consequences of his criminal conduct and is doing everything in his power to forge a new life. The Defendant's post-offense conduct indicates neither that he will return to criminal behavior nor that the Defendant is

---

[2] Defense counsel also failed to mention that while significant amounts of cash were involved and that Mr. Tam would meet complete strangers in parking lots to pick up large amounts of cash, Mr. Tam did possess a firearm.

a danger to society.  In fact, the Defendant's post-offense conduct was not motivated by a desire to please the Court or any other governmental agency, but was the pre-Indictment product of the Defendant's own desire to lead a better life." *Gall,* 552 U.S. at 44-45.  The Supreme Court affirmed the district court's sentence of 36 months probation, despite an advisory guideline range of 30 to 37 months.  The Supreme Court rejected the Eighth Circuit's conclusion that a sentence of probation was inadequate and found that the district court judge explained its sentencing decision for probation and upheld the significant deviation from the Guideline range.  *Gall*, 552 U.S. at 49-60.  *See also United States v. Warner,* 792 F.3d 847 (7th Cir. 2015) (The defendant's advisory sentencing range was 46 to 57 months, and this Court upheld the sentence of two years' probation in light of Judge Kocoras' reliance upon the comprehensive evidence defense counsel presented in mitigation under § 3553(a)).

Here, defense counsel failed to present, develop, and argue in mitigation the substantial and compelling information available to support the numerous points set forth above.  In addition, the absolute North Star in terms of sentencing, as set forth in § 3553(a), is to impose a sentence that is "***sufficient, but not greater than necessary***" to comply with the purposes set forth in § 3553(a)(2). Through this "parsimony provision," the district court is to impose a sentence that is the *minimum* necessary to accomplish those goals set forth in paragraph (2).  And, yet, in this case, defense counsel does not even mention in his paltry three-page sentencing memorandum, let alone argue in his brief "two-page" comments at sentencing, that a sentence significantly below the Guidelines would be sufficient, but not greater than necessary in light of the wealth of § 3553(a) information and material readily available to present in mitigation on behalf of Mr. Tam.[3]

There can be little debate that defense counsel's performance on behalf of Xuan Tam fell

---

[3]  It appears that defense counsel also failed to introduce any letters from family members, friends, and the community attesting to Mr. Tam's devotion to his family, his character, his work ethic, and his overall law-abiding life since his voluntary withdrawal from the conspiracy in 2017.

below an objective standard of reasonableness, as contemplated by *Strickland*.

Prejudice

Mr. Tam sought a two-level reduction in his offense level based upon his minor role in the offense, pursuant to U.S.S.G. § 3B1.2. As noted above, the Sentencing Guidelines sets forth five factors to be considered when determining whether to make a downward adjustment based upon the defendant's role in the offense. Defense counsel did not address ***any*** of these five factors in his three-page sentencing memorandum, nor did counsel address ***any*** of these five factors at the sentencing hearing.

Mr. Tam was prejudiced because (i) the district court failed to properly consider the degree to which Mr. Tam knew of the scope and structure of that organization; (ii) the district failed to properly consider the degree to which Mr. Tam participated in planning or organizing the criminal activity; (iii) the district court failed to properly consider the degree to which Mr. Tam exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the district court failed to properly consider the nature and extent of Mr. Tam's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion Mr. Tam had in performing those acts; and (v) the district court failed to properly consider the degree to which Mr. Tam stood to benefit from the criminal activity.

In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the United States Supreme Court held, "The right to counsel is a fundamental right of criminal defendants; as it assures the fairness and thus the legitimacy of our adversary process." The *Kimmelman* Court further held:

> "The right of an accused to counsel is beyond question a fundamental right. [Citations.] ('The right of one charged with a crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours'). Without counsel the right to a fair trial itself would be of little consequence, [citations], for it is through counsel that the accused secures his other rights. [Citations.] ('Of all the rights that an accused person has, the right to be represented by counsel is by far the

18

more pervasive, for it affects his ability to assert any other rights he may have'). . . .
In other words, the right to counsel is the right to effective assistance of counsel."
*Kimmelman*, 477 U.S. at 377.

In the instant case, the failures of Mr. Tam's defense counsel set forth above demonstrate in no uncertain terms that counsel's performance fell below a standard of reasonableness, and that Mr. Tam was prejudiced as a result. Accordingly, this Court should vacate the defendant's sentence and remand the cause with instructions to conduct a new sentencing hearing.

<u>CONCLUSION</u>

WHEREFORE, based on the foregoing facts, authority and argument, Defendant-Appellant Xuan Tam respectfully requests that this Honorable Court vacate his sentence and remand the case for a new sentencing hearing consistent with this Court's opinion.

Respectfully submitted,

/s/ Jeffrey B. Steinback
Jeffrey B. Steinback
Attorney for Xuan Tam

JEFFREY B. STEINBACK
8351 Snaresbrook Road
Roscoe, Illinois 61073
(847) 624-9600
Attorney for Xuan Tam

19

RULE 30(D) CERTIFICATE OF COMPLIANCE

Pursuant to Circuit Rule 30(d), I, Jeffrey B. Steinback, counsel for Defendant-Appellant, Xuan Tam, state that the appendices submitted with this brief on appeal incorporate the material required under Circuit Rule 30(a) and (b).

/s/ Jeffrey B. Steinback
Jeffrey B. Steinback

CERTIFICATE OF COMPLIANCE
WITH FRAP RULE 32(a)(7), FRAP RULE 32(g) and CR 32(c)

The undersigned counsel of record for the Defendant-Appellant, Xuan Tam, furnishes the following in compliance with F.R.A.P. 32(a)(7):

I hereby certify that this brief conforms to the rules in F.R.A.P. 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 6,565 words. This certification is made in reliance on the character count of the Word word processing system used to prepare this brief.

/s/ Jeffrey B. Steinback
Jeffrey B. Steinback

CERTIFICATE OF SERVICE

I hereby certify that I caused a true and accurate copy of the attached Brief to be served upon the government by electronically serving it through the CM/ECF system on November 4, 2022.

/s/ Jeffrey B. Steinback
Jeffrey B. Steinback

**A P P E N D I X**

## TABLE OF CONTENTS

Judgment in a Criminal Case filed July 19, 2022 (Dkt. No. 184)

# UNITED STATES DISTRICT COURT

Northern District of Illinois

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) | |
| | ) | |
| XUAN TAM | ) | Case Number:    1:19-CR-00158(5) |
| | ) | USM Number:    17198-509 |
| | ) | |
| | ) | |
| | ) | Marc E. Gottreich |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☒ pleaded guilty to count(s) 1 of the Superseding Indictment.

☐ pleaded nolo contendere to count(s)          which was accepted by the court.

☐ was found guilty on count(s)          after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| **Title & Section / Nature of Offense** | **Offense Ended** | **Count** |
|---|---|---|
| 18:1956-4100.F Money Laundering - Bank Embezzlement | 06/30/2019 | 1 |

The defendant is sentenced as provided in pages 2 through    8    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☒ Count(s) remaining are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

July 19, 2022
Date of imposition of judgment

Signature of Judge

Virginia M. Kendall, United States District Judge
Name and Title of Judge

7-20-22
Date

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 2 – Imprisonment                                                                                      Judgment - Page 2 of 8

DEFENDANT: XUAN TAM
CASE NUMBER: 1:19-CR-00158(5)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Sixty five (65) months as to count 1 of the Superseding Indictment.

☒        The court makes the following recommendations to the Bureau of Prisons: that the defendant be incarcerated in Colorado.

☐        The defendant is remanded to the custody of the United States Marshal.

☐        The defendant shall surrender to the United States Marshal for this district:

       ☐        at            on

  ☐        as notified by the United States Marshal.

  ☒        The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

       ☒        before 2:00 pm on October 14, 2022.

       ☐        as notified by the United States Marshal.

       ☐        as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at _____, with a certified copy of this
judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 3 – Supervised Release

DEFENDANT: XUAN TAM
CASE NUMBER: 1:19-CR-00158(5)

## MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)

Upon release from imprisonment, you shall be on supervised release for a term of:
Two (2) years as to count 1 of the Superseding Indictment.

The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**

☒ (1) you shall not commit another Federal, State, or local crime.

☒ (2) you shall not unlawfully possess a controlled substance.

☐ (3) you shall attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, if an approved program is readily available within a 50-mile radius of your legal residence. [Use for a first conviction of a domestic violence crime, as defined in **§ 3561(b)**.]

☐ (4) you shall register and comply with all requirements of the Sex Offender Registration and Notification Act (**42 U.S.C. § 16913**).

☒ (5) you shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

☐ (6) you shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on supervised release and at least two periodic tests thereafter, up to 104 periodic tests for use of a controlled substance during each year of supervised release. [This mandatory condition may be ameliorated or suspended by the court for any defendant if reliable sentencing information indicates a low risk of future substance abuse by the defendant.]

## DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)

**Discretionary Conditions** — The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in **§ 3553(a)(1)** and **(a)(2)(B), (C), and (D)**; such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in **§ 3553 (a)(2) (B), (C), and (D)**; and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to **28 U.S.C. 994a**. The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**

☒ (1) you shall provide financial support to any dependents if you are financially able to do so.

☐ (2) you shall make restitution to a victim of the offense under **§ 3556** (but not subject to the limitation of **§ 3663(a)** or **§ 3663A(c)(1)(A)**).

☐ (3) you shall give to the victims of the offense notice pursuant to the provisions of **§ 3555**, as follows:

☒ (4) you shall seek, and work conscientiously at, lawful employment, or, if you are not gainfully employed, you shall pursue conscientiously a course of study or vocational training that will equip you for employment.

☐ (5) you shall refrain from engaging in the following occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in the following specified occupation, business, or profession only to a stated degree or under stated circumstances; (if checked yes, please indicate restriction(s))

☒ (6) you shall not knowingly meet or communicate with any person whom you know to be engaged, or planning to be engaged, in criminal activity and shall not:
    ☐ visit the following type of places:
    ☐ knowingly meet or communicate with the following persons:

☒ (7) you shall refrain from ☐ any or ☒ excessive use of alcohol (defined as ☐ having a blood alcohol concentration greater than 0.08; or ☐ ), and from any use of a narcotic drug or other controlled substance, as defined in **§ 102** of the Controlled Substances Act (**21 U.S.C. § 802**), without a prescription by a licensed medical practitioner.

☒ (8) you shall not possess a firearm, destructive device, or other dangerous weapon.

☐ (9) ☐ you shall participate, at the direction of a probation officer, in a substance abuse treatment program, which may include urine testing up to a maximum of 104 tests per year.
    ☐ you shall participate, at the direction of a probation officer, in a mental health treatment program, and shall take any medications prescribed by the mental health treatment provider.
    ☐ you shall participate, at the direction of a probation officer, in medical care; (if checked yes, please specify: )

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 3 – Supervised Release    Judgment—Page 4 of 8

DEFENDANT: XUAN TAM
CASE NUMBER: 1:19-CR-00158(5)

☐ (10)  (intermittent confinement): you shall remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling ▨ [no more than the lesser of one year or the term of imprisonment authorized for the offense], during the first year of the term of supervised release (provided, however, that a condition set forth in §3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with § 3583(e)(2) and only when facilities are available) for the following period ▨

☐ (11)  (community confinement): you shall reside at, or participate in the program of a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of supervised release, for a period of ▨ months.

☐ (12)  you shall work in community service for ▨ hours as directed by a probation officer.

☐ (13)  you shall reside in the following place or area: ▨, or refrain from residing in a specified place or area: ▨

☒ (14)  you shall not knowingly leave from the federal judicial district where you are being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.

☒ (15)  you shall report to the probation office in the federal judicial district to which you are released within 72 hours of your release from imprisonment. You shall thereafter report to a probation officer at reasonable times as directed by the court or a probation officer.

☒ (16)  ☒    you shall permit a probation officer to visit you ☒ at any reasonable time or ☐ as specified:        ,
        ☒ at home    ☐ at work    ☐ at school    ☒ at a community service location
        ☒ other reasonable location specified by a probation officer
        ☒    you shall permit confiscation of any contraband observed in plain view of the probation officer.

☒ (17)  you shall notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. You shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege.

☒ (18)  you shall notify a probation officer within 72 hours if after being arrested, charged with a crime, or questioned by a law enforcement officer.

☐ (19)  (home confinement)
        ☐    (a)(i) (home incarceration) for a period of __ months, you are restricted to your residence at all times except for medical necessities and court appearances or other activities specifically approved by the court.
        ☐    (a)(ii) (home detention) for a period of __ months, you are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities pre-approved by the probation officer.
        ☐    (a)(iii) (curfew) for a period of __ months, you are restricted to your residence every day.
        ☐    from the times directed by the probation officer; or ☐ from __ to __.
        ☐    (b) your compliance with this condition, as well as other court-imposed conditions of supervision, shall be monitored by a form of location monitoring technology selected at the discretion of the probation officer, and you shall abide by all technology requirements.
        ☐    (c) you shall pay all or part of the cost of the location monitoring, at the daily contractual rate, if you are financially able to do so.

☐ (20)  you shall comply with the terms of any court order or order of an administrative process pursuant to the law of a State, the District of Columbia, or any other possession or territory of the United States, requiring payments by you for the support and maintenance of a child or of a child and the parent with whom the child is living.

☐ (21)  (deportation): you shall be surrendered to a duly authorized official of the Homeland Security Department for a determination on the issue of deportability by the appropriate authority in accordance with the laws under the Immigration and Nationality Act and the established implementing regulations. If ordered deported, you shall not remain in or enter the United States without obtaining, in advance, the express written consent of the United States Attorney General or the United States Secretary of the Department of Homeland Security.

☒ (22)  you shall satisfy such other special conditions as ordered below.

☐ (23)  You shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. 1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of your supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case      Document: 10      Filed: 11/04/2022      Pages: 37      Judgment—Page 5 of 8
Sheet 3 – Supervised Release

DEFENDANT: XUAN TAM
CASE NUMBER: 1:19-CR-00158(5)

          reasonable manner.

☐   (24)   Other:

## SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)

The court imposes those conditions identified by checkmarks below:

**During the term of supervised release:**

☐   (1)   if you have not obtained a high school diploma or equivalent, you shall participate in a General Educational Development (GED) preparation course and seek to obtain a GED within the first year of supervision.

☐   (2)   you shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

☒   (3)   you shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, perform at least 20 hours of community service per week at the direction of the probation office until gainfully employed. The total amount of community service required over your term of service shall not exceed 200 hours.

☐   (4)   you shall not maintain employment where you have access to other individual's personal information, including, but not limited to, Social Security numbers and credit card numbers (or money) unless approved by a probation officer.

☒   (5)   you shall not incur new credit charges or open additional lines of credit without the approval of a probation officer unless you are in compliance with the financial obligations imposed by this judgment.

☒   (6)   you shall provide a probation officer with access to any requested financial information requested by the probation officer to monitor compliance with conditions of supervised release.

☒   (7)   within 72 hours of any significant change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments, you must notify the probation officer of the change.

☐   (8)   you shall file accurate income tax returns and pay all taxes, interest, and penalties as required by law.

☐   (9)   you shall participate in a sex offender treatment program. The specific program and provider will be determined by a probation officer. You shall comply with all recommended treatment which may include psychological and physiological testing. You shall maintain use of all prescribed medications.

    ☐   You shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. You shall consent to the installation of computer monitoring software on all identified computers to which you have access and to which the probation officer has legitimate access by right or consent. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. You shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

    ☐   The cost of the monitoring shall be paid by you at the monthly contractual rate, if you are financially able, subject to satisfaction of other financial obligations imposed by this judgment.

    ☐   You shall not possess or use at any location (including your place of employment), any computer, external storage device, or any device with access to the Internet or any online computer service without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system

    ☐   You shall not possess any device that could be used for covert photography without the prior approval of a probation officer.

    ☐   You shall not view or possess child pornography. If the treatment provider determines that exposure to other sexually stimulating material may be detrimental to the treatment process, or that additional conditions are likely to assist the treatment process, such proposed conditions shall be promptly presented to the court, for a determination, pursuant to **18 U.S.C. § 3583(e)(2)**, regarding whether to enlarge or otherwise modify the conditions of supervision to include conditions consistent with the recommendations of the treatment provider.

    ☐   You shall not, without the approval of a probation officer and treatment provider, engage in activities that will put you in unsupervised private contact with any person under the age of 18, and you shall not knowingly visit locations where persons under the age of 18 regularly congregate, including parks, schools, school bus stops, playgrounds, and childcare facilities. This condition does not apply to contact in the course of normal commercial business or unintentional incidental contact

    ☐   This condition does not apply to your family members:       [Names]

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 3 – Supervised Release

DEFENDANT: XUAN TAM
CASE NUMBER: 1:19-CR-00158(5)

☐     Your employment shall be restricted to the judicial district and division where you reside or are supervised, unless approval is granted by a probation officer. Prior to accepting any form of employment, you shall seek the approval of a probation officer, in order to allow the probation officer the opportunity to assess the level of risk to the community you will pose if employed in a particular capacity. You shall not participate in any volunteer activity that may cause you to come into direct contact with children except under circumstances approved in advance by a probation officer and treatment provider.

☐     You shall provide the probation officer with copies of your telephone bills, all credit card statements/receipts, and any other financial information requested.

☐     You shall comply with all state and local laws pertaining to convicted sex offenders, including such laws that impose restrictions beyond those set forth in this order.

☐   (10)   you shall pay to the Clerk of the Court any financial obligation ordered herein that remains unpaid at the commencement of the term of supervised release, at a rate of not less than 10% of the total of your gross earnings minus federal and state income tax withholdings.

☒   (11)   you shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the prior permission of the court.

☐   (12)   you shall pay to the Clerk of the Court $▓▓▓▓ as repayment to the United States of government funds you received during the investigation of this offense. (The Clerk of the Court shall remit the funds to ▓▓▓▓ (list both Agency and Address.)

☐   (13)   if the probation officer determines that you pose a risk to another person (including an organization or members of the community), the probation officer may require you to tell the person about the risk, and you must comply with that instruction. Such notification could include advising the person about your record of arrests and convictions and substance use. The probation officer may contact the person and confirm that you have told the person about the risk.

☐   (14)   You shall observe one Reentry Court session, as instructed by your probation officer.

☐   (15)   Other: ▓▓▓▓

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 5 – Criminal Monetary Penalties

DEFENDANT:  XUAN TAM
CASE NUMBER:  1:19-CR-00158(5)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $100.00 | $.00 | $.00 | $.00 | $.00 |

☐    The determination of restitution is deferred until      . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐    The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

     If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal victims must be paid before the United States is paid.

☐    Restitution amount ordered pursuant to plea agreement $

☐    The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to **18 U.S.C. § 3612(f)**.  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g)**.

☐    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

     ☐    the interest requirement is waived for the    .

     ☐    the interest requirement for the    is modified as follows:

☐    The defendant's non-exempt assets, if any, are subject to immediate execution to satisfy any outstanding restitution or fine obligations.

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

ILND 245B (Rev. 03/12/2020) Judgment in a Criminal Case
Sheet 6 – Schedule of Payments

DEFENDANT: XUAN TAM
CASE NUMBER: 1:19-CR-00158(5)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☒  Lump sum payment of $100.00 due immediately.

   ☐  balance due not later than          , or

   ☐  balance due in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C  ☐  Payment in equal          (e.g. weekly, monthly, quarterly) installments of $          over a period of          (e.g., months or years), to
       commence          (e.g., 30 or 60 days) after the date of this judgment; or

D  ☐  Payment in equal          (e.g. weekly, monthly, quarterly) installments of $          over a period of          (e.g., months or years), to
       commence          (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within          (e.g., 30 or 60 days) after release from imprisonment.
       The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>(including defendant number) | Total Amount | Joint and Several<br>Amount | Corresponding Payee, if<br>Appropriate |
|---|---|---|---|

**See above for Defendant and Co-Defendant Names and Case Numbers (*including defendant number*), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.**

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☒  The defendant shall forfeit the defendant's interest in the following property to the United States: See attached Preliminary Order of Forfeiture.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 19 CR 158-5 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| XUAN TAM | ) | |

## <u>PRELIMINARY ORDER OF FORFEITURE</u>

The United States of America, through JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, moves for entry of a preliminary order of forfeiture as to specific property pursuant to the provisions of Title 18, United States Code, Section 982(a)(1), and Federal Rule of Criminal Procedure 32.2, and in support thereof submits the following:

(a)    On October 20, 2020, a superseding indictment was returned charging defendant XUAN TAM with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count One), money laundering, in violation of 18 U.S.C. § 1956(a)(B)(i) (Count Two) and operating an unlicensed money transmitting business, in violation of 18 U.S.C. § 1960 (Count Eight). The superseding indictment sought forfeiture to the United States of any property involved in such offenses, and any property traceable to such offenses, pursuant to the provisions of 18 U.S.C. § 982(a)(1).

(b)    On February 15, 2022, pursuant to Fed R. Crim. P. 11, defendant XUAN TAM entered a voluntary plea of guilty to Count One of the superseding indictment, thereby making certain property subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1).

(c)     Pursuant to the terms of the plea agreement, defendant XUAN TAM agreed that funds in the amount of $7,500 are subject to forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(2), which represents the amount of money TAM personally earned through his participation in the money laundering conspiracy.

(d)     Defendant XUAN TAM further agreed to the entry of a personal money judgment in the amount of $7,500 pursuant to the provisions of 18 U.S.C. § 982(a)(2).

(e)     Pursuant to the provisions of 18 U.S.C. § 982(a)(1), and Fed. R. Crim. P. 32.2, if any of the funds in the amount of $7,500 money judgment entered against defendant XUAN TAM as a result of any act or omission of the defendant:

1.     cannot be located upon the exercise of due diligence;

2.     has been transferred or sold to, or deposited with, a third party;

3.     has been placed beyond the jurisdiction of the Court;

4.     has been substantially diminished in value, or

5.     has been commingled with other property which cannot be divided without difficulty;

the United States shall request that this Court order the forfeiture of any other property belonging to defendant XUAN TAM up to the value of $7,500, in order to satisfy the personal money judgment entered by the Court.

(f)     The United States requests that the terms and conditions of this preliminary order of forfeiture entered by this Court be made part of the sentence imposed against defendant XUAN TAM and included in any judgment and commitment order entered in this case against her.

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

2

1.    That, a personal money judgment in the amount of $7,500 is entered against defendant XUAN TAM;

2.    That, upon entry of this preliminary order of forfeiture, the Court hereby authorizes the Attorney General or his designated representatives to conduct discovery to identify or locate property subject to forfeiture, including substitute assets, and to seize property ordered forfeited upon such terms and conditions as set forth by the Court;

3.    That, the terms and conditions of this preliminary order of forfeiture entered by this Court be made part of the sentence imposed against defendant XUAN TAM and included in any judgment and commitment order entered in this case against him;

4.    That, this Court shall retain jurisdiction in this matter to take additional action and enter further orders as necessary to implement and enforce this forfeiture order.

VIRGINIA M. KENDALLL
United States District Judge

DATED:    7/18/2022

3